**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MICHELLE LYNN RAPONI,**

               **Plaintiff,**

**v.**                                **Case No:   6:19-cv-1206-Orl-18LRH**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

               **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

      Michelle Lynn Raponi ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further administrative proceedings.   Doc. No. 25, at 14, 20, 27.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should be affirmed. *Id*. at 27.   For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY.

      On March 26, 2016, Claimant filed an application for disability benefits, alleging that she became disabled on June 1, 2014.   R. 160–63.   Claimant later amended the alleged disability onset date to June 29, 2016.   R. 15, 279.   Her claim was denied initially and on reconsideration, and she requested a hearing before an ALJ.   R. 86–89, 93–97, 99–101.   A hearing was held before the ALJ

on May 30, 2018, at which Claimant was represented by an attorney.   R. 33–58.   Claimant and a vocational expert ("VE") testified at the hearing.   *Id.*

The ALJ subsequently issued an unfavorable decision finding that Claimant was not disabled.   R. 15–27.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 284–86.   On April 28, 2019, the Appeals Council denied the request for review.   R. 1–6. Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc. No. 1.

## II.   THE ALJ'S DECISION.[1]

After considering the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 15–27.[2]   The ALJ found that Claimant met the insured status requirements of the Social Security Act through March 31, 2019.   R. 17.   The ALJ concluded that Claimant had not engaged in substantial gainful activity since the amended alleged disability onset date of June 29, 2016.   *Id.*   The ALJ found that Claimant suffered from the following severe impairments:   status-post lumbar surgery and osteoarthritis.   *Id.*   The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 19.

---

[1] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.  Doc. No. 25.  Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference and only restate them herein as relevant to considering the issues raised by Claimant.

[2] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

After careful consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in the Social Security regulations,[3] with the following limitations:

> Sit up to 50% of the workday at a workstation; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; but no ladders, ropes, or scaffolds; avoid: overhead reaching bilaterally, work at heights, work with dangerous machinery, constant vibration, foot controls, and constant temperatures over 90°F and under 40°F; work tasks should be 1-5 steps learned in 90 days, performed at her own workstation or work area.

R. 19–20.

The ALJ concluded that Claimant was unable to perform any past relevant work, including work as an accounting clerk or cashier I.   R. 25.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ found that there were jobs existing in significant numbers in the national economy that Claimant could perform, such as assembler of electrical accessories I, ticket taker, and ticket seller.   R. 25–26.   Accordingly, the ALJ concluded that Claimant was not disabled.   R. 26–27.

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the

---

[3] The social security regulations define light work to include:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    ANALYSIS.

In the joint memorandum, which I have reviewed, Claimant raises two assignments of error: (1) the ALJ erred in determining that Claimant had the RFC to perform light work after failing to adequately consider and weigh the opinions of Claimant's treating physician, Nizam Razack, M.D.; and (2) the ALJ erred in relying on the testimony of the VE after posing a hypothetical that did not adequately reflect Claimant's limitations, and failed to confirm whether the VE's testimony conflicted with the Dictionary of Occupational Titles ("DOT"). Doc. No. 25, at 14, 20. I will address these contentions in turn.

A.     Opinions of Treating Physician.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The ALJ considers a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   *Id.* § 404.1527(c).   A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.   *See id.* § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence).   There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records.   *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1241).

Here, Claimant contends that the ALJ failed to "indicate the weight [s]he assigned to the opinion of the claimant's treating physician, Dr. Razack."   Doc. No. 25, at 15.   Claimant then points to medical records from Spine and Brain Neurosurgery Center, in which "it is specifically

opined that the claimant could only lift five to seven pounds," which Claimant contends is "clearly inconsistent" with the ALJ's RFC determination.   *Id.* at 15–16 (citing R. 507, Exhibit 8F).

What Claimant fails to address, however, is that the treatment note she cites was not from Dr. Razack, but rather was issued by Certified Physician Assistant James Piotrowski.   *See* R. 505–07.   At the time Claimant applied for disability benefits, a certified physician's assistant was not an "acceptable medical source" under the applicable regulations.   *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (effective September 3, 2013 through March 26, 2017).   Instead, a certified physician's assistant was considered an "other source," whose opinion was not entitled to any special deference. *Id.*; *see also Sindaco v. Colvin*, No. 6:14-cv-164-Orl-DAB, 2015 WL 867917, at *7 (M.D. Fla. Mar. 2, 2015) ("[P]hysician's assistants are not considered to be 'acceptable medical sources' but are considered to be 'other sources.'" (citing 20 C.F.R. §§ 404.1513(a), (d)(1))).

Although the ALJ has a duty to "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011), Claimant has cited no authority indicating that this duty pertains to opinions from a non-acceptable medical source, such as a certified physician's assistant.   *See Zawatsky v. Comm'r of Soc. Sec.*, No. 6:13-cv-1976-Orl-18DAB, 2015 WL 179284, at *5 (M.D. Fla. Jan. 14, 2015) (finding same as it relates to opinions of a chiropractor); *Smith v. Colvin*, No. 3:15-cv-77-J-MCR, 2015 WL 12861144, at *3 (M.D. Fla. Dec. 30, 2015) (finding same as to nurse practitioner).   Rather, "[t]he opinions of a physician assistant constitute evidence to be considered on the record as a whole." *See Duncan v. Astrue*, No. 3:07-cv-751-J-HTS, 2008 WL 1925091, at *2 (M.D. Fla. 2008) (citation omitted).

Here, in the decision, the ALJ discussed Claimant's surgeries, her records from Spine & Brain Neurosurgery Center, as well as her postoperative visits with PA-C Piotrowski.   R. 22–23.

Although the ALJ did not specifically recite Claimant's postoperative lifting restrictions recommended by PA-C Piotrowski following her January 23, 2017 surgery, the ALJ did note that following a second surgery on August 14, 2017, PA-C Piotrowski made the same recommendation. R. 23.[4]   Thus, it is clear from the decision that the ALJ considered the records and opinions therein regarding Claimant's surgeries.   And although not addressed by Claimant, based on a review of the record, it appears that the 5 to 7-pound lifting restriction was a short-term postoperative restriction following the January 23, 2017 surgery.   As the Commissioner notes, after PA-C Piotrowski issued this 5 to 7-pound lifting restriction, Claimant had several follow-up visits with PA-C Piotrowski. *See* R. 476–79, 480–83, 484–87, 493–96, 497–500, 501–04.   During none of those visits did PA-C Piotrowski recommend or otherwise require such a lifting restriction, until after she underwent a second surgery on August 14, 2017.   *See* 480–83, 484–87, 493–96, 497–500, 501–04, 505–07. Likewise, at a follow-up visit after Claimant's second surgery on August 14, 2017, PA-C Piotrowksi did not advise Claimant of any lifting restrictions.   *See* R. 467–69.

There is no "rigid requirement that the ALJ specifically refer to every piece of evidence in [the] decision," so long as the ALJ enables the reviewing Court to conclude that the ALJ considered the claimant's medical condition as a whole.   *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).   Based on the facts of this case, I recommend the Court find that the ALJ did not reversibly err in failing to explicitly address and weigh the opinion from PA-C Piatkowski regarding Claimant's post-surgery lifting restrictions.   *See also Logan v. Comm'r of Soc. Sec.*, No. 3:18-cv-196-J-PDB, 2019 WL 1417450, at *3 (M.D. Fla. Mar. 29, 2019) (concluding that ALJ did not err in failing to explicitly weigh opinion of physician's assistant); *Williams v. Comm'r of Soc. Sec.*, No.

---

[4] In the joint memorandum, Claimant does not address the lifting restrictions following the second surgery.

6:12-cv-1134-Orl-DAB, 2013 WL 6332728, at *4 (M.D. Fla. Dec. 5, 2013) (finding physician's assistant's conclusory opinion was not a "medical opinion entitled to deference, and the ALJ was not required to explicitly analyze it as such"); *Domenitz v. Colvin*, No. 8:12-cv-146-T-17-EAJ, 2013 WL 4495135, at *11 (M.D. Fla. Aug. 20, 2013) ("The ALJ did not err in failing to discuss or assign weight to Physician Assistant Gottlieb's opinion, as a physician's assistant is not an acceptable medical source and not entitled to any special weight." (citing 20 C.F.R. § 404.1513(a))).

For these reasons, I recommend that the Court reject Claimant's first assignment of error.

B.    Reliance on Testimony of VE.

An ALJ may consider the testimony of a VE at step five of the sequential evaluation process when determining whether the claimant can perform other jobs in the national economy.   *Phillips*, 357 F.3d at 1240.   The ALJ must pose hypothetical questions that are accurate and that include all of the claimant's functional limitations.   *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).   However, the ALJ is not required to include in the hypothetical question "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Claimant argues that the ALJ failed to include all of the limitations discussed above regarding Claimant's RFC in the hypothetical question to the VE.   Doc. No. 25, at 20–21.   The success of this argument is contingent on the success of Claimant's first assignment of error.   As discussed above, I recommend the Court find that the ALJ's RFC determination is supported by substantial evidence.   Consequently, "the ALJ's hypothetical question to the VE, which is consistent with the ALJ's RFC determination, properly accounted for Claimant's functional limitations."   *See Straka-Acton v. Comm'r of Soc. Sec.*, No. 6:14-cv-630-Orl-GJK, 2015 WL

5734936, at *4 (M.D. Fla. Sept. 29, 2015); *see also Ybarra v. Comm'r of Soc. Sec*., 658 F. App'x 538, 543 (11th Cir. 2016) (rejecting argument that the ALJ's hypothetical to the VE was defective "because the criticisms that [the claimant] aims at the hypothetical question are identical to those leveled at the ALJ's RFC, and, as discussed above, the RFC is supported by substantial evidence").[5]

Claimant also argues that the ALJ failed to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and argues that the VE's testimony was inconsistent with the DOT because the DOT "does not address light jobs with the requirement of sitting for 50% of the day."  Doc. No. 25, at 22–23.   As the Commissioner argues, however, the transcript from the hearing before the ALJ reflects that Claimant herself explored this issue with the VE, as did the ALJ.   Specifically, during the hearing, the ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual who can perform light work as it [is] defined in the DOT.   The individual should be able to sit up to 50% of the work day at the work station.   Occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps or stairs, but never ladders, ropes or scaffolds.   Avoid overhead reaching bilaterally, work at heights and with dangerous machinery, constant vibration, foot controls and constant temperatures over 90 and under 40 degrees Fahrenheit.   Work tasks should be about one to five steps, learned in 90 days, performed at the individual's own work station or work area.

R. 53.[6]   With these limitations, the VE testified that the hypothetical individual would not be able to perform Claimant's past relevant work.   *Id.*   However, the VE testified that the individual would be able to perform work as "Assembler, electrical accessories I, 729.687-010, light, SVP 2, approximately 21,000 jobs in the national economy. Ticket taker, 344.667-010, light, SVP 2,

---

[5] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority.   *See* 11th Cir. R. 36-2.

[6] Claimant does not dispute that the hypothetical question to the VE reflected the same limitations in the ALJ's determination of Claimant's RFC.   *Compare* R. 53, *with* R. 19–20.

approximately 26,000 jobs in the national economy. Ticket seller, 211.467-030, light, SVP 2, approximately 28,000 jobs in the national economy." *Id.*

In follow-up questioning by Claimant's attorney, the following exchange took place:

[Attorney]:   So, the sitting for 50% of the day is strictly up to the employer, it is not a general statement for all jobs for ticket takers or assemblers, etc.?

[VE]:   Right, no, it's based -- some employers do allow, so in my experience, some employers do allow employees to use a stool to perform duties of the job.

[Attorney]:   Okay and does that reduce the numbers that you gave me?

[VE]:   Yes.

[Attorney]:   So the number of jobs, for instance, an assembler electrician, electrical one or ticket taker, ticket seller, how much would that reduce those numbers that you provided?   The fact that they need to sit 50% of the time?

[VE]:   The assembler, electrical accessories I would be reduced 50%, about 10,000 jobs.

[Attorney]:   Okay. The ticket taker and the ticket seller?

[VE]:   One moment. The ticket taker would be approximately 13,000 jobs.

[Attorney]:   So it's a 50% reduction. Okay.

[VE]:   And then for ticket seller, that one would be approximately 17,000 jobs in the national economy. That one's about 60% or 40%.

R. 55–56.   The ALJ thereafter questioned the VE as follows:

ALJ:   Okay. And why did you select 50% to reduce the numbers?

[VE]:   That is based on -- and I just want to clarify that the DOT does not refer to the deletion of different directions, so that information, along with the off task and absenteeism is based on my experience working as a rehabilitation counselor, providing job placement services, working directly with employers, analyzing the essential duties of the jobs and other resources such as Bureau of Labor Statistics, other occupational handbooks, seminars and workshops.

ALJ:   Okay. So, why specifically did you pick 50%?

[VE]:  That's when we survey employers, when we do labor market surveys, and we survey different employers --

ALJ:  Okay.

[VE]:  One of the things we ask them is again the ability for a person to sit or stand or use a stool or use other things that they do not consider an accommodation, but allow a person to do and still do the duties of the job.  So, those are based on the results of our studies and our surveys when working directly with employers.

ALJ:  Okay. . . .

R. 56–57.  Thus, as the Commissioner argues, the record reflects that any conflicts between the DOT and the testimony of the VE regarding the requirement of sitting 50% of the day were adequately addressed at the hearing before the ALJ.  Claimant "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion."  *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012).  And, I note that even if there was an inconsistency between the VE testimony and the DOT, the ALJ "obtain[ed] a reasonable explanation for the apparent conflict," which is what the Social Security regulations require.  *See* SSR 00-4P, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000)[7]; *see also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-CV-48-OC-DNF, 2014 WL 582885, at *5 (M.D. Fla. Feb. 13, 2014) ("Plaintiff[] is asking the Court to go one step further than SSR 00–4p, by requiring the ALJ to have an affirmative duty to independently investigate where there is a potential conflict between the vocational expert's testimony and the DOT, and not to allow the ALJ to rely on the vocational expert's testimony that the occupational evidence presented was consistent with the DOT.  SSR 00–4p does not require an ALJ to independently investigate whether a conflict exists, it simply requires that that ALJ ask the

---

[7] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . . ."  *Klawinski v. Comm'r of Soc. Sec.*, 391 Fed. App'x 772, 775 (11th Cir. 2010) (citation omitted).

vocational expert if a conflict does exist, and if a conflict exists, then the ALJ must explain and resolve the conflict." (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006))).

For these reasons, I recommend that the Court reject Claimant's second assignment of error.

## V.   RECOMMENDATION.

Upon consideration of the foregoing, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.   It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on the Report and Recommendation and, thereafter, to close the file.

### <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 18, 2020.

**LESLIE R. HOFFMAN**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished to:

Presiding District Judge
Counsel of Record